**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| ARCESIUM LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADVENT SOFTWARE, INC. and SS&C<br>TECHNOLOGIES HOLDINGS, INC.,<br><br>Defendants. | : Case No: 1:20-cv-04389 (MKV)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN OPPOSITION TO SS&C'S MOTION**
**TO CLARIFY OR MODIFY THE PROTECTIVE ORDER**

Dated: June 14, 2021

Of Counsel:

GORDON REES SCULLY
MANSUKHANI, LLP
Brian E. Middlebrook
Richard L. Green* (*pro hac vice* admission
to be sought)
One Battery Park Plaza
28th Floor
New York, NY 10004
(212) 269-5500
bmiddlebrook@grsm.com
rlgreen@grsm.com

*Resident in Glastonbury, Connecticut office*

DEBEVOISE & PLIMPTON LLP
Jeremy Feigelson
James J. Pastore
Megan K. Bannigan
919 Third Avenue
New York, NY 10022
(212) 909-6000
jfeigelson@debevoise.com
jjpastore@debevoise.com
mkbannigan@debevoise.com

*Counsel for Plaintiff Arcesium LLC*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................ 1

**BACKGROUND** ................................................................................ 2

    **A. The Parties Negotiate, and the Court Approves, a Protective Order Explicitly Limiting Use of Confidential Discovery Material to "This Litigation" – The Now-Dismissed Antitrust Case** ....................................................... 2

    **B. Arcesium Scrupulously Adheres to and Relies on the Protective Order Throughout the Antitrust Litigation and After Its Dismissal** ................... 4

    **C. Only After the Antitrust Litigation Is Dismissed, SS&C Reveals Its Plan to File a New Trade Secrets Case Using Discovery Material** ..................... 5

    **D. The Proposed Complaint Uses Discovery Material to Grossly Distort Arcesium's Lawful Business Activities** .............................................. 6

        **1.** ███████████████████ ....................................................... 6

        **2.** ████████████████████████ ............................................... 7

        **3.** ███████████████████ ....................................................... 9

**ARGUMENT** ..................................................................................... 10

**I. The Protective Order Needs No Clarification, as It Plainly Forbids What SS&C Attempts to Do** ............................................................................. 10

**II. The Protective Order Should Not Be Modified** ...................................... 12

    **A. The Presumption Against Modification Applies** ................................ 12

        **1. The Express Language of the Protective Order Confirms Arcesium's Reasonable Reliance on It** ......................................................... 13

        **2. Arcesium And SS&C Could Only Designate Specific Categories of Documents for Protection** ......................................................... 15

        **3. The Court Found "Good Cause" to Enter the PO** ............................ 16

        **4. The Sensitive Nature of the Documents Arcesium Produced Confirm Its Reasonable Reliance on the PO** ................................................. 17

    **B. SS&C Has Not Met Its Burden to Show any Need – Much Less a Compelling One – To Modify the Protective Order** ............................................ 19

**III. SS&C's Proposed Complaint Is a Meritless Distortion of Arcesium's Efforts at Fair and Lawful Competition** ........................................................... 21

**CONCLUSION** ................................................................................. 25

## **TABLE OF AUTHORITIES**

**Cases**

*Ad Lightning Inc. v. Clean.io, Inc.*,
    2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) .........................................................................21

*BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*,
    2013 WL 4434361 (E.D. La. Aug. 15, 2013) .........................................................................11

*Best Payphones v. City of New York*,
    2014 WL 12811911 (E.D.N.Y. Mar. 11, 2014) ...............................................................18, 19

*Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*,
    988 F.3d 127 (2d Cir. 2021) .................................................................................................19

*Dorsett v. Cty. of Nassau*,
    289 F.R.D. 54 (E.D.N.Y. 2012) ...........................................................................................19

*Elsevier Inc. v. Dr. Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .........................................................................22

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
    2017 WL 4641247 (S.D.N.Y. Oct. 16, 2017) ..................................................................16, 18

*Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*,
    2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018) .....................................................................22

*Geller v. Branic Int'l Realty Corp.*,
    212 F.3d 734 (2d Cir. 2000) .................................................................................................10

*Giuffre v. Dershowitz*,
    2020 WL 3578104 (S.D.N.Y. July 1, 2020) ....................................................................14, 18

*In re Agent Orange Prod. Liab. Litig.*,
    821 F.2d 139 (2d Cir. 1987) ............................................................................................15, 16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    255 F.R.D. 308 (D. Conn. 2009) ..........................................................................................17

*In re Hornbeam Corp.*,
    2020 WL 4698955 (S.D.N.Y. Aug. 13, 2020) .....................................................................19

*In re NASDAQ Market-Makers Antitrust Litig.*,
    164 F.R.D. 346 (S.D.N.Y. 1996) .........................................................................................17

*In re Reserve Fund Sec. & Derivative Litig.*,
  2009 WL 10465018 (S.D.N.Y. Aug. 26, 2009) ........................................................14

*In re Unseal Civil Discovery Materials*,
  2021 WL 1164272 (S.D.N.Y. Mar. 24, 2021) ..........................................13, 15, 16

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
  2010 WL 779314 (S.D.N.Y. Mar. 2, 2010), *aff'd*, 415 F. App'x 286 (2d Cir.
  2011) ................................................................................................15, 16, 18, 20

*Jose Luis Pelaez, Inc. v. Scholastic, Inc.*,
  312 F. Supp. 3d 413 (S.D.N.Y. 2018)....................................................................14

*Kumaran v. Northland Energy Trading, LLC*, 19-8345, 2021 WL 797113
  (S.D.N.Y. Feb. 26, 2021) ................................................................................21, 22

*Martindell v. Int'l Tel. & Tel. Corp.*,
  594 F.2d 291 (2d Cir. 1979)..........................................................................18, 20

*Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*,
  2009 WL 2135294 (S.D.N.Y. July 16, 2009) .........................................................15

*MPI Tech A/S v. Int'l Bus. Machines Corp.*,
  No. 15-489 (S.D.N.Y. Oct. 13, 2016) .......................................................10, 12, 18

*Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*,
  112 F. Supp. 3d 83, 120 (S.D.N.Y. 2015) .................................12, 13, 14, 15, 20

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
  976 F. Supp. 917 (N.D. Cal. 1997) ........................................................................10

*S.E.C. v. TheStreet.Com*,
  273 F.3d 222 (2d Cir. 2001).............................................................................12, 18

*Tradewinds Airlines, Inc. v. Soros*,
  2016 WL 3951181 (S.D.N.Y. July 20, 2016) .........................................................17

*United States v. Kerik*,
  2014 WL 12710346 (S.D.N.Y. July 23, 2014) .......................................................13

*Wolters Kluwer Fin. Servs. Inc. v. Scivantage*,
  2007 WL 1498114 (S.D.N.Y. May 23, 2007) .........................................................11

**Statutes**

Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA").............................................21

**Other Authorities**

Rule 26(c) of the Federal Rules of Civil Procedure.......................................................................17

While this now-closed case (the "Antitrust Litigation") was still open, plaintiff Arcesium L.L.C. ("Arcesium") and defendants Advent Software, Inc. ("Advent") and SS&C Technologies Holdings, Inc. (together with Advent, "SS&C") carefully negotiated a Protective Order ("PO") that this Court approved. Arcesium opposes SS&C's motion to clarify or modify the PO.

## PRELIMINARY STATEMENT

SS&C seeks leave to file a new and meritless lawsuit that is based entirely on the confidential discovery materials produced in the old one. Leave should be denied.

There is no need to "clarify" the PO. It already clearly limits use of discovery material to "this litigation." On a plain reading, which is what the law requires, "this litigation" means the now-closed Antitrust Litigation itself. It plainly does ***not*** mean—as SS&C would have it—any dispute factually adjacent to the Antitrust Litigation.

Nor is there any basis for modifying the PO, given the circumstances of this case and the legal presumption favoring enforcement of a PO according to its terms. Arcesium has reasonably relied on the PO during and after the Antitrust Litigation. Arcesium has abided by the obligations under the PO, including by deleting SS&C's documents once the case was over. SS&C has not met, and cannot meet, its burden to establish that the PO was improvidently granted, or that a compelling need or extraordinary circumstances exist to warrant modification.

SS&C had every opportunity to avoid this dispute by simply alerting Arcesium and the Court to its intentions while the Antitrust Litigation remained open. The lodging of counterclaims together with a pro forma answer, without prejudice to the motion to dismiss, would have sufficed. Even a letter would have at least created an opportunity to timely discuss the issue, including by providing SS&C clarity on the documents it now seeks to distort. Instead, SS&C remained silent – no doubt out of concern that its counterclaims would encourage Arcesium to replead the antitrust complaint. SS&C sought instead to *close* the Antitrust

Litigation without disclosing its intentions; the day after this Court granted SS&C's motion and closed the case, SS&C revealed for the first time its plan to file a new complaint using the discovery from the case it had just asked the Court to close. SS&C remains free to try and plead its meritless trade secret case if, and only if, it can meet federal pleading standards without any use of the protected discovery materials. But its sharp practices should not be rewarded with permission to use those materials.

The prejudice to Arcesium in allowing the complaint to be filed supplies further grounds for rejecting SS&C's motion. The proposed complaint is rife with false, tabloid-style allegations of theft of intellectual property. SS&C plainly seeks to embarrass and commercially injure Arcesium by the mere act of posting the baseless complaint to the public docket. Hyperbole aside, SS&C alleges only ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████

The Antitrust Litigation is over. There is no basis in law, fact, or fairness for allowing a new case under a new caption to rise from its ashes. SS&C's motion should be denied.

## BACKGROUND

### A.   The Parties Negotiate, and the Court Approves, a Protective Order Explicitly Limiting Use of Confidential Discovery Material to "This Litigation" – The Now-Dismissed Antitrust Case

The parties heavily negotiated a protective order to facilitate discovery while SS&C's motion to dismiss the Antitrust Litigation was pending. Negotiations lasted from July to

November 2020. The parties exchanged at least eight drafts. The bulk of the actual drafting was done by SS&C's counsel. Bannigan Decl. ¶¶ 3-9.

The Court found that good cause supported the party-drafted PO, and "so ordered" it without amendment on December 17, 2020. ECF No. 103, at 1, 13. Given the sensitivity of the information at issue in the Antitrust Litigation, the final PO includes strict requirements regarding the designation of and access to documents, which must be made "in good faith and with particularity," PO ¶ 2.1, and includes not two, but three separate tiers of confidentiality that SS&C initially drafted ("Confidential Information," "Highly Confidential-Attorneys' and Experts' Eyes Only" ("AEO"), and "Highly Confidential-Outside Counsel and Experts' Eyes Only" ("OCEO")), with objective standards by which designation may be made and specific examples of what constitutes such material. PO ¶¶ 1.7-1.9; Bannigan Decl. ¶ 7. It also includes several provisions making clear the PO applies only to the Antitrust Litigation and the disclosed documents must be destroyed or returned at the conclusion, including:

- the "Basic Principle[]" that "[a] Receiving Party may use Discovery Material only in connection with this litigation, including for prosecuting, defending, or attempting to settle it" (PO ¶ 4.1);

- the requirement that "within sixty (60) days after the final termination of this action, including appeals, each Receiving Party must destroy or return all Protected Material to the Producing Party" (PO ¶ 3.4); and

- an undertaking, which all parties accessing produced information must sign (PO ¶¶ 4.2-4.4) that mandates compliance with the PO and relates only to "*Arcesium LLC v. Advent Software, Inc. and SS&C Technologies Holdings, Inc.*, Case No: 1:20-cv-04389 (MKV), a litigation pending in the United States District Court for

the Southern District of New York (the 'Action' in the 'Court')" (PO Ex. A).
*Contrast* SS&C Motion at 5, ECF No. 118 ("Mot.") (asserting that the
"Protective Order does not define the phrase 'this litigation,' nor does it specify
that 'this litigation' is limited to the above-captioned case").

### B.    Arcesium Scrupulously Adheres to and Relies on the Protective Order Throughout the Antitrust Litigation and After Its Dismissal

With the PO negotiated, and understanding that both parties relied on and were bound by its terms, Arcesium reviewed over 600,000 documents, producing to SS&C over 110,000 documents, totaling over 450,000 pages in 17 weeks. Bannigan Decl. ¶¶ 11-12. All documents were thoroughly reviewed and designated under the various confidentiality tiers in good faith, as required by the PO. *Id.* ¶ 12.

The productions were the result of over two months of negotiations with SS&C regarding document search terms and custodians, in response to SS&C's 48 broad document requests focused largely on the antitrust claims in that litigation; the majority of these requests have no application to SS&C's new trade secret claims. *Id.* ¶¶ 10-11. Despite objecting to several of these requests and proposed search terms as irrelevant and overbroad, Arcesium agreed to the broad review and production, given its desire to avoid burdening the court with unnecessary discovery disputes. *Id.* ¶ 11. Arcesium would not have taken these steps—risking production of arguably irrelevant documents—if the PO was not enforceable and could not limit use of discovery material to the Antitrust Litigation. *Id.*

The documents produced included highly sensitive business and competitive planning strategies, ranging from pricing plans to acquisition strategies and proprietary information related to the technological implementation of all aspects of Arcesium's integrated technology platform.

*Id.* ¶ 12. As SS&C itself acknowledged, the productions included the parties' "most sensitive trade secrets regarding customers, pricing, and strategic development."  ECF No. 97, at 2.

On March 31, 2021, the Court dismissed Arcesium's antitrust claims for lack of standing and declined to exercise supplemental jurisdiction over the state law claims. ECF Nos. 109, 110. The Court's order included a grant of leave to replead within 30 days. *Id.* Arcesium chose not to amend the complaint or appeal. Abiding by the express terms of the PO, Arcesium promptly destroyed the documents SS&C produced during the Antitrust Litigation. Bannigan Decl. ¶ 14.

### C.     Only After the Antitrust Litigation Is Dismissed, SS&C Reveals Its Plan to File a New Trade Secrets Case Using Discovery Material

SS&C moved the Court to enter final judgment in the Antitrust Litigation on May 4, 2021. ECF No. 111. It made no mention to the Court or to Arcesium of any plans for continued litigation or use of discovery material. *See id*.; Bannigan Decl. ¶ 16. On May 6, 2021, the Court granted the motion, entered final judgment, and closed the case. ECF Nos. 113, 114.

The very next day, SS&C wrote to Arcesium and revealed for the first time its intention to file a new trade secrets case relying on documents produced by Arcesium in the Antitrust Litigation. Bannigan Decl. ¶ 15.The text of SS&C's proposed trade secrets complaint (ECF No. 118-1 ("Proposed Compl.")) makes clear that SS&C relies extensively on discovery materials that Arcesium had marked confidential under the PO. In particular, the proposed complaint appears to exclusively rely on AEO and OCEO material, with most of the quoted documents designated as OCEO. Bannigan Decl. ¶ 17. Under the PO, the OCEO designation means that at all times only SS&C's outside counsel were allowed to see the materials. *See* PO ¶ 4.4.

A separate concern is how SS&C could possibly have complied with the PO while working on its complaint ***after*** the dismissal of the Antitrust Litigation. It also remains, at best, unclear how SS&C could have authorized the new complaint without its executives having

access, at least in substance, to the discovery materials that Arcesium had marked for outside counsel's eyes only.[1]

### D.    The Proposed Complaint Uses Discovery Material to Grossly Distort Arcesium's Lawful Business Activities

SS&C's proposed new complaint is premised on the false notion that Arcesium is competing via misuse of SS&C intellectual property. As briefly explained here, Arcesium is in fact competing through the independent development of excellent products and services.

**1.**    ████████████████████████████

When Arcesium first launched, it decided to partner with Advent, using Advent's Geneva software to perform the accounting calculations central to completing certain investment-related tasks as part of its full bundle of Post Trade Solutions ("PTS"). ECF No. 25, ¶¶ 2-4. Arcesium negotiated a five-year hosted reseller agreement with Advent in 2015 (the "HRA"), which allowed Arcesium to procure Geneva licenses for clients and integrate Geneva into clients' Arcesium solutions. ECF No. 22-1; ECF No. 24, ¶ 4.

Shortly before Advent was to sign the HRA, SS&C acquired Advent. SS&C competes with Arcesium; Advent did not. ECF No, 23, ¶ 17. SS&C nevertheless permitted Advent to sign the agreement with Arcesium, and Arcesium began reselling Geneva licenses. ECF No. 22-1.████

████████████████████████████████████████████████

████████████████████████████████. Dougherty Decl. ¶ 3.

████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ¶

4. █████████████████████████████████████████████

---



*See id.* ¶¶ 4, 6.

. *Id.* ¶ 5.

*Id.* ¶ 6.

. *Id.*

. *Id.*

. *Id.* ¶¶ 5-6.

. *Id.* ¶ 6.

.

**2.**

As Arcesium anticipated, when it came time to discuss renewal of the HRA in 2019, SS&C refused to renew unless Arcesium agreed to unreasonable terms. ECF No. 23, ¶¶ 18-19. This forced Arcesium to let the HRA expire. *Id.* SS&C also proceeded to breach the HRA by cutting off Arcesium's contractual continuation rights. *See id.* Those rights entitled Arcesium to continue servicing current clients who had licenses for Geneva even after the HRA as a whole expired—a crucial protection for Arcesium's clients, intended to spare them the substantial burdens of switching from Geneva to a new accounting software. *Id.* ¶¶ 14-15. SS&C also added

conditions to renewed client licenses that would prevent Arcesium from accessing those licenses

in the future. *See* ECF No. 21, at 9, Ex. D.



. *See* Dougherty Decl. ¶ 7.

. *Id.*

*Id.*

. *Id.*

. *Id.*¶ 8.

*Id.*

. *Id.*

. *Id.*

. *See id.* at ¶¶ 9-10.

*Id.* ¶ 9.

. *Id.* ¶¶ 9-10.

██████████████████████. *Id.* ¶ 10. ██████████████████

████████████████████████████████████. *Id.* ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

     ██████████████████████████████████

████████████████████████████████ Proposed Compl. ¶¶ 60-

61. ████████████████████████████████

████████████████████████████████████████████████████.

*See infra* p. 23.

   **3.** ██████████████████████████

     ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See, e.g.,*

Bannigan Decl., Ex. L, at 55 (ARC0000108364) ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ *See, e.g.*, Proposed Compl. ¶ 66.

**ARGUMENT**

**I.    The Protective Order Needs No Clarification, as It Plainly Forbids What SS&C Attempts to Do**

The PO needs no clarification but rather only to be interpreted "as its plain language dictates." *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000); Bannigan Decl. Ex. N, Order at 5, *MPI Tech A/S v. Int'l Bus. Machines Corp.*, No. 15-489, ECF. No. 224 (S.D.N.Y. Oct. 13, 2016) ("MPI Order"); *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997) ("a common sense, plain reading"). Under the caption of the Antitrust Litigation, the PO unambiguously states: "A Receiving Party may use Discovery Material *only in connection with this litigation*, including for prosecuting, defending, or attempting to settle *it*." PO ¶ 4.1 (emphasis added). The form of undertaking appended to the PO includes "this litigation" and states that the undertaking relates to only "*Arcesium LLC v. Advent Software, Inc. and SS&C Technologies Holdings, Inc.*, Case No: 1:20-cv-04389 (MKV)." PO, Ex. A.  SS&C could have properly used the discovery material to plead counterclaims within the Antitrust Litigation. But it opted not to do that, and must bear the consequences of its choice. The plain language of the PO forbids it from now using that material to file a new case under a different caption.

SS&C engages in a tortured reading, not the required common-sense, plain one, when it urges that "this litigation" means *any* litigation involving the same parties, related claims, and the same court:

- SS&C's attempt to distinguish "this litigation" from "this action," Mot. at 8, has no merit. The PO refers to "litigation" and "action" interchangeably. *See, e.g.,* PO ¶ 3.4 (documents must be returned or destroyed "within sixty (60) days after the final termination of *this action*" (emphasis added)); PO ¶ 3.5 ("This Protective

Order shall continue to be binding after the conclusion of ***this litigation***"

(emphasis added)); PO ¶¶ 4.2-4.4 & Ex. A (requiring undertaking to be signed to

access protected material in "this litigation," referred to as "*Arcesium LLC v.*

*Advent Software, Inc. and SS&C Technologies Holdings, Inc.*, Case No: 1:20-cv-

04389 (MKV) . . . the 'Action'"). These provisions would make no sense if

"action" and "litigation" were read differently.

- SS&C conspicuously omits the Black's Law Dictionary, Mot. at 8, definition for

  "litigation," which in fact sends readers to the definition of "action." SS&C also

  errs by claiming that the definition of "action" is "a ***single*** 'judicial

  proceeding[.].'" *Id.* (emphasis added), when the word "single" does not actually

  appear in that definition. BLACK'S LAW DICTIONARY (11th ed. 2019). *See also*

  Mot. 8 (contending that "litigation" refers to a "controversy that can span multiple

  stages," while the cited definition refers simply to the appeal process, not to a new

  litigation).

- There is nothing in the PO – or case law – to support that the new litigation is a

  "continuation" of the previous one, Mot. at 7. The proposed trade secrets

  litigation would be a new, separate case, to be filed under a new docket number.

  *See Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07-2352, 2007 WL

  1498114, at *8 (S.D.N.Y. May 23, 2007) ("refiled lawsuit after a voluntary

  dismissal is a 'new' and 'second' lawsuit."); *BCR Safeguard Holding, L.L.C. v.

  Morgan Stanley Real Estate Advisor, Inc.*, No. 13-0066, 2013 WL 4434361, at

  *13 (E.D. La. Aug. 15, 2013), *rev'd in part on other grounds*, 614 F. App'x 690

  (5th Cir. 2015) ("A straightforward reading of this provision demonstrates that it

was not the intent of the parties to open the definition of 'this action' to include

any subsequent or collateral proceeding."); MPI Order at 9 ("[B]y using discovery

material in this case to prosecute a 'related' case . . . MPI would still be using that

discovery material to prosecute a new and separate case − a use that would not be

permitted under the plain language of the Protective Order.").

"This litigation" plainly means the Antitrust Litigation and no other. SS&C seeks to

rewrite the PO, not to "clarify" it. The Court should deny SS&C's attempt to do so.

## II.    The Protective Order Should Not Be Modified

### A.    The Presumption Against Modification Applies

Denial of the motion is warranted given the Second Circuit's "strong presumption against

the modification of a protective order." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir.

2001). SS&C errs in arguing that this presumption applies only in cases where "external parties"

seek access to documents, or where a party seeks to use documents in a different forum or

against new parties. Mot. at 9, 16. Rather, the presumption applies in all scenarios where, as

here, the "legitimate expectations of litigants" would be "unfairly disturbed" by modification.

*TheStreet.Com*, 273 F.3d at 230; MPI Order at 8-9 (related litigation between same opposing

parties compared to a "wholly separate lawsuit" is "a distinction without a difference" with

respect to interpretation and modification). That presumption is defeated only if a court finds that

a party's reliance was "unreasonable." *See TheStreet.Com*, 273 F.3d at 231; *Nielsen Co. (U.S.),*

*LLC v. Success Sys., Inc*., 112 F. Supp. 3d 83, 120 (S.D.N.Y. 2015) ("[T]he outcome in a

particular case is dependent upon [the] protective order's particular characteristics." (internal

quotation marks and citation omitted)).

After months of negotiating the PO—delaying document production until both parties

were satisfied with its provisions—and at SS&C's suggestion, the parties agreed to limit use of

each other's documents to the Antitrust Litigation; SS&C identified this limitation as a "[b]asic [p]rinciple[]" of the agreement. Bannigan Decl., ¶6, Ex. B (SS&C draft PO). Arcesium seeks simply to protect its legitimate expectations that confidential business documents could not—and would not—be used in any other proceeding, and especially not one in which they are taken out of context in an attempt to bolster meritless claims brought under different legal theories. Indeed, these expectations were set largely because SS&C, a highly sophisticated party, expressly *suggested* and agreed to the exact provision it now looks to contravene. *See United States v. Kerik*, No. 07-1027, 2014 WL 12710346, at *2 (S.D.N.Y. July 23, 2014) (denying to vacate protective order, noting in part "Kerik is not a stranger to the litigation in which the Protective Order was issued. Indeed, he expressly agreed to be bound by the Protective Order"); *Nielsen*, 112 F. Supp. 3d at 121–22 ("reasonable belief" that the order limited discovery use to a particular matter, even though party seeking modification could have raised the claims in its new complaint as counterclaims in that matter and some of the same discovery would potentially be involved in the new litigation).

The factors that courts look to assess whether reliance on a protective order was reasonable all favor Arcesium: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *In re Unseal Civil Discovery Materials*, No. 19-00179, 2021 WL 1164272, at *3 (S.D.N.Y. Mar. 24, 2021) (internal quotations and citation omitted). These factors confirm that the presumption against modification should apply here.

### 1.    The Express Language of the Protective Order Confirms Arcesium's Reasonable Reliance on It

The PO's plain terms not only limit use to "this litigation," but also require destruction or return of all Protected Material within 60 days of final termination of the Antitrust Litigation. PO

¶¶ 3.4, 4.1. In accordance with that provision, Arcesium destroyed SS&C's Protected Material given the understanding that it could no longer be used. Bannigan Decl. ¶ 14.

Where protective orders contain such language, courts routinely conclude there was reasonable reliance on the orders. *See, e.g., Nielsen*, 112 F. Supp. 3d at 121 (no modification to allow use in other litigation where provisions requiring destruction of materials within 45 days suggest that party "could reasonably expect that any information produced subject to the Protective Order would ordinarily not be used in other matters"); *Giuffre v. Dershowitz*, No. 15-7433, 2020 WL 3578104, at *4–5 (S.D.N.Y. July 1, 2020) (where order prohibited confidential material from being "disclosed or used for any purpose except for the preparation and trial of the [particular] case . . . that producing parties are 'justified in believing that a protective order would not be modified for purposes external to the lawsuit in which it was entered' may be a dispositive factor in denying modification of a protective order" (internal quotation marks and citation omitted)); *Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, 312 F. Supp. 3d 413, 417 (S.D.N.Y. 2018) (denying modification where it was "reasonable that in conducting discovery [a party] relied on the provision 'limiting the use of confidential information to this case'"); *see also In re Reserve Fund Sec. & Derivative Litig.*, No. 09-1288, 2009 WL 10465018, at *2 (S.D.N.Y. Aug. 26, 2009) (order violated where it stated material may be used "only in connection *with* and for the *purpose* of [this] action" and party used it in "a related" action (emphasis in original)).

SS&C argues in vain that other provisions of the PO cut against the strong presumption of reasonable reliance by Arcesium. For example, SS&C points to the provision permitting modification of the PO but, "by definition, any court order is subject to that court's modification" and courts have found that "[s]uch a provision does not . . . undermine the parties' expectation that the [order in this case] will not be modified to allow confidential materials they

produced in this litigation to be used in other litigation." *Med. Diagnostic Imaging, PLLC v. Carecore Nat., LLC*, No. 06-13516, 2009 WL 2135294, at *3 (S.D.N.Y. July 16, 2009); *see also Nielsen*, 112 F. Supp. 3d at 121 (reasonable reliance to prevent use in other litigations even where modification clause existed).

Similarly, in pointing to provisions that permit use of confidential material at trial, SS&C ignores other language in the PO that plainly evinces the parties' intention to be bound by the PO beyond both pre-trial proceedings ***and*** the close of litigation. PO ¶ 3.5. *See also In re Unseal*, 2021 WL 1164272, at *2 (trial provisions do not support modification, in part because "condition never arose"). Accordingly, "[r]eliance on the continued effect of the Protective Order was and is, therefore, entirely reasonable." *Id.*

### 2. Arcesium And SS&C Could Only Designate Specific Categories of Documents for Protection

Courts that refuse to enforce protective orders are primarily concerned with "blanket" orders that are "simultaneously [] overbroad and abusive" and that "give the parties wide berth to give sweeping protection *to most or all* material produced in the litigation." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, No. 05-2745, 2010 WL 779314, at *4 (S.D.N.Y. Mar. 2, 2010), *aff'd*, 415 F. App'x 286 (2d Cir. 2011) (emphasis added). Where parties have unlimited discretion in designating documents as confidential, courts view protective orders as "exceptionally pervasive" and are less likely to find reasonable reliance. *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987); *see Int'l Equity Invs.*, 2010 WL 779314, at *4. Here, contrary to the unlimited discretion about which courts are concerned, the designation of documents under the parties' PO was a hotly negotiated topic. *See* Bannigan Decl. ¶¶ 3, 8. In fact, the PO constrains the ability of each party to designate documents as AEO and OCEO—like the documents at issue here—by including, in the PO itself, examples of documents that would

qualify for these levels of protection. PO ¶¶ 1.8-1.9. The inclusion of these exemplars makes clear the parties intended a narrowly tailored PO, and provided the Court with an objective basis to assess confidentiality designations if disputes arose between the parties.

Other provisions of the PO reinforce the care with which the parties worked to avoid blanket claims of confidentiality; among other things, the PO (i) makes designations "subject to objective standards," *In re Unseal*, 2021 WL 1164272, at *3, *see* PO ¶¶ 1.7-1.9, (ii) includes three levels of "narrowed categories of the documents that may be protected," *Int'l Equity Invs.*, 2010 WL 779314, at *7, *see* PO ¶¶ 1.7-1.9, and (iii) allows parties to designate material only in "good faith" after attorney review. *In re Unseal*, 2021 WL 1164272, at *3; PO ¶ 2.1; *see also Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-2044, 2017 WL 4641247, at *3 (S.D.N.Y. Oct. 16, 2017) (protective order "specific and targeted" where party did not vaguely designate "any sensitive document," but described "what type of documents would be considered highly confidential"). Courts have found that protective orders containing similar provisions are not "blanket" orders that "might be disfavored." *In re Unseal*, 2021 WL 1164272, at *3. *Compare Int'l Equity*, 2010 WL 779314, at *5 (no reasonable reliance where order broadly includes designation for "things belonging to or concerning a party" (internal quotation marks and citation omitted)); *In re Agent Orange*, 821 F.2d at 147–48 (no reasonable reliance where order protects ***all*** material produced "whether appellants themselves considered protection to be necessary").

### 3.    The Court Found "Good Cause" to Enter the PO

Contrary to SS&C's argument, reasonable reliance is not limited to cases where courts make particularized findings of "good cause" for individual documents. *See, e.g., Errant Gene*, 2017 WL 4641247, at *4 (reasonable reliance found where court made "comprehensive inquiry into the terms of the protective order before granting the order" even though individual

documents did not appear to be examined). In any event, here the Court was presented with a PO that included examples of the particular types of documents that would qualify for heightened confidentiality protections, and entered an order in which it "found that good cause exists for the issuance of this order [] pursuant to Rule 26(c) of the Federal Rules of Civil Procedure," ECF No. 103; PO at 1. The sensitive nature of the documents that have since been produced—which even SS&C acknowledges contain the parties' "most sensitive trade secrets" (ECF No. 97, at 2)—underscores that the Court's good cause finding was warranted. *See In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 357 (S.D.N.Y. 1996) (even without particularized showing of good cause at time entered, defendants "demonstrated that the Protective Order was issued for good cause" given sensitive nature of discovery at issue); *compare Tradewinds Airlines, Inc. v. Soros*, No. 08-5901, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) ("Court 'so ordered' the parties' stipulation *without having cause* to determine whether all the documents covered actually warranted protection." (emphasis added)); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 322 (D. Conn. 2009) (parties "did not make a good cause showing" in part where they did not "delineate the kinds of documents, contemplated for protection" (internal citation and quotation omitted)). There is no reason to disturb the Court's prior conclusion that "good cause" supports the terms of the PO.

### 4. The Sensitive Nature of the Documents Arcesium Produced Confirm Its Reasonable Reliance on the PO

The documents Arcesium produced and on which SS&C now proposes to rely are just the sort of sensitive materials that, courts have noted, support that a party reasonably relied on the protective order—a principle that derives from the common-sense notion that parties are less likely to produce highly sensitive documents if they do not believe they can rely on the terms of the protective order. *See, e.g., Errant Gene*, 2017 WL 4641247, at *4 (noting sensitive nature of

documents and that "reliance on the protective order is thus supported by the potential for these documents to expose [a party] to additional litigation."); *Giuffre*, 2020 WL 3578104, at *4 (provision limiting use to litigation at hand "functioned as a powerful mechanism for inducing parties to provide discovery in a contentious litigation"); *Best Payphones v. City of New York*, No. 03-192, 2014 WL 12811911, at *6 (E.D.N.Y. Mar. 11, 2014) ("This business focus of the Coastal plaintiffs' concerns can be seen by the fact that the confidentiality Order includes a provision to designate certain materials as confidential for trial counsel's eyes only."); *Int'l Equity Invs.*, 2010 WL 779314, at *8 (suggesting inclusion of "attorneys' eyes only' designation" and nature of non-public information produced "support the notion that the Parties reasonably relied on the stipulation"); *see also TheStreet.Com*, 273 F.3d at 229 n.7 (counseling against limiting application of the presumption solely to cases involving the government, or circumstances like those in *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979)).

There can be no dispute that the documents produced by Arceisum in the Antitrust Litigation included highly sensitive information. *See supra* p. 4. If Arceisum thought it could not rely on the PO's protections, it would have been more likely to dispute some of SS&C's discovery requests as irrelevant, and made "more considered determinations" on responsiveness. *See* MPI Order at 15 (internal quotation marks and citation omitted). Instead, it agreed to broad search terms it otherwise would not have, and produced tens of thousands of documents in just 17 weeks with the understanding SS&C's use of those documents would be limited. *See id.* (finding reasonable reliance under similar circumstances); *supra* p. 4. Moreover, Arceisum plainly relied on the PO in fulfilling its duty to destroy the documents SS&C produced in discovery. *Supra* p. 5. Arceisum's legitimate expectations that its confidential business

documents would not be used in a new litigation after the Antitrust Litigation ended—even if by the same opposing party—should not be disturbed.

### B.     SS&C Has Not Met Its Burden to Show any Need – Much Less a Compelling One – To Modify the Protective Order

The presumption against modification applies, so SS&C bears the burden to establish that the PO was improvidently granted, or that a compelling need or extraordinary circumstances exist. *See Dorsett v. Cty. of Nassau*, 289 F.R.D. 54, 66 (E.D.N.Y. 2012). It does not come close to meeting that burden. Even if the presumption did not apply, SS&C could not show "good cause" to modify the PO. *See Best Payphones, Inc.*, 2014 WL 12811911, at *7.

SS&C, a highly sophisticated party, extensively negotiated the terms of the PO, including by suggesting the "basic principle" that discovery material could only be used in "this litigation." Bannigan Decl. ¶¶ 3-8.  Subsequently, SS&C chose not to file a counterclaim. *Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 137, n. 9 (2d Cir. 2021) (permissible to "serve an answer and counterclaim alongside the motion to dismiss"). Instead, it successfully moved to dismiss the Antitrust Litigation, and moved to close "this litigation."  *Supra* p. 5. The Court granted that motion on May 6, 2021. *Id*. The very next day, SS&C for the first time announced its intention to initiate a new litigation, raising new claims, but relying on the documents produced in the Antirust Litigation. *Id*.

SS&C had every right to choose a litigation strategy that prioritized its motion to dismiss. Having made and benefited from that choice, it cannot now act as if the case is still ongoing. *See In re Hornbeam Corp.*, No. 14-424, 2020 WL 4698955, at *4 (S.D.N.Y. Aug. 13, 2020) ("mere change in litigation strategy at a later point should not be sufficient to unwind a protective order, especially where—as here—the protections were seriously contested, twice amended, and ultimately agreed to by the parties"); *see also Nielsen*, 112 F. Supp.3d at 121-22 (no "legitimate"

challenge where movant had "every opportunity to use the materials . . . in this action to litigate any claims" even though movant's claims were not compulsory counterclaims).

Nor do SS&C's stated reasons for modification carry its burden to establish a compelling need (or good cause) to modify the PO. Instead, it posits a counterfactual world in which "the Court denied SS&C's motion to dismiss" and asserts that SS&C would have "used the discovery documents to defend against Arcesium's antitrust claims and to pursue counterclaims against Arcesium." Mot. at 1. But that is precisely the point: SS&C has no need to defend against the now-dismissed antitrust claims given that the Court *granted* the motion to dismiss and granted SS&C's motion to close this litigation. "[T]his litigation" is over. That SS&C resorts to repeatedly posing hypothetical counterfactuals in which it needs the documents to "defend against Arcesium's antitrust claims and to pursue counterclaims," *Id*. at 1-2, 7-8, 13-14, highlights there is no compelling need, or good cause, to modify the PO.

That is particularly true because the Court found "good cause" to grant the PO in the first place, and the nature of the discovery produced pursuant to the PO amply demonstrates that that finding was warranted. *Supra* pp. 16-17. Courts routinely refuse to modify protective orders even where there was no initial "good cause" finding when the PO was issued. *See, e.g., Martindell*, 594 F.2d at 293 (modification denied where protective order involves a "stipulation of confidentiality, 'so ordered' by [the judge]" and there was no evidence of a "good cause" finding by the court); *Int'l Equity Invs., Inc*., 2010 WL 779314, at *8 (denying modification even in the absence of a "good cause hearing" when first issued); *Nielsen*, 112 F. Supp.3d at 121 (denying modification for use of discovery outside of "this lawsuit" even in absence of court hearing). The argument to deny SS&C's request is even more compelling here, given the Court's prior finding of good cause.

### III.   SS&C's Proposed Complaint Is a Meritless Distortion of Arcesium's Efforts at Fair and Lawful Competition

The Court can and should deny SS&C's motion based solely on the considerations outlined above. Given that SS&C is arguing an urgent need to bring its new complaint in the interests of justice, Mot. at 2, it is appropriate for the Court to also give some consideration to the complaint itself. That consideration yields but one conclusion: the party whose interests need protection is Arcesium. The complaint is colorful but legally and factually baseless, and the act of its filing is obviously designed to injure Arcesium in the public eye.

Even taken at face value, SS&C's proposed complaint is legally deficient because it simply does not plead trade secrets. ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████   *See* Proposed Compl. ¶¶ 78-110. Under the DTSA, SS&C must allege with specificity, but has not and cannot, what the "secret" information is, how it is kept secret, and why it is valuable. *Kumaran v. Northland Energy Trading, LLC*, 19-8345, 2021 WL 797113, at *11 (S.D.N.Y. Feb. 26, 2021). SS&C also must allege, but has not and cannot, *how* Arcesium misappropriated its secret information; as a matter of law, conclusory assumptions will not suffice. *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-7367, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020). SS&C's general references to "confidential and proprietary information" and its allegation of Arcesium's prior access to Geneva fall far short of meeting the pleading burden. *See, e.g.*, Proposed Compl. ¶ 4.

████████████████████████████████████████████████████████ ████████████████████████████████████   Proposed Compl. ¶ 20. Other than general descriptions, SS&C "does not elucidate how [these features] function," reflecting a failure to plead what the secret information is. *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-5540,

2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). Further, SS&C does not even attempt to plead anything about the particular value of these (unspecified) trade secrets, ██████████████ ██████████. *Id.* at *6 (dismissing where no information on value of "most specific assertion" of trade secret).

SS&C's proposed allegations as to ████████ and ██████ likewise are vague and legally insufficient. ████████████████████████████ ████████████ Proposed Compl. ¶¶ 53, 64, does not describe anything that the DTSA protects. ████████, SS&C likewise offers only the conclusory statements ████████ ████████████████████████████████ ████████████████. Proposed Compl. ¶ 59. *See Elsevier Inc.*, 2018 WL 557906, at *6 (granting motion to dismiss where "trade secrets" consisted of "methods" and "processes," including "database field names, parameters[,] database schema information" and the like); *Kumaran*, 2021 WL 797113, at *11 ("[g]eneral allegations regarding 'confidential information' and 'processes'. . . do not give rise to a plausible trade secrets claim"); *Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*, No. 17- 8078, 2018 WL 4757961, at * 5-6 (S.D.N.Y. Sept. 30, 2018) (finding "conclusory [allegations] that [] products are similar . . . without any elaboration or explanation that would permit the Court to reasonably infer that the similarities were the result of the misappropriation" are inadequate). SS&C's allegations ████████████████ ████ Proposed Compl. ¶ 47, are similarly vague and conclusory, and fail for the same reasons.

The proposed complaint not only fails under the law but severely misstates the facts. It would be premature to attempt a full factual rebuttal in this context, but Arcesium notes for now:

- SS&C would falsely allege ████████████████████ ████████ Proposed Compl. ¶¶ 48-50, 53, when the documents relied upon



establish t █████████████████████████████████

████████ *See, e.g.*, Bannigan Decl., Ex. D (ARC0000263379) ████████████

█████████████████████████████████; Ex. E (ARC0000307100) (█████

██████████████████████████████████████

████████████████████████████████████████████████

████████████; Dougherty Dec. ¶ 14 (████████████████████████

████████████████████

- SS&C would falsely allege ████████████████████████████████,

Proposed Compl. ¶ 56, ██████████████████████████████████

████████████████████████████████████████

████████████████ Dougherty Decl. ¶ 11 ███████████████████████

████████████████ Bannigan Decl., Ex. K (ARC0000277956) █████████

█████████████████████████████████████

████████████████████████████████████████████ *See*

Dougherty Decl. ¶ 10.

- SS&C misdescribes documents █████████████████████████████

██████████████████████████████████████████

████████████████████████ Proposed Compl. ¶ 67. As the actual documents

make clear, ███████████████████████████████████████

████████████, *see supra* p. 9—██████████████████████████

████████ *See supra* p. 9; Dougherty Decl. ¶¶ 12-13.

- SS&C misdescribes ██████████████████████████████████

███████████████████████, Proposed Compl. ¶ 76, when the actual documents

23

show ████████████████████████████████

████████████████████████. *See, e.g.*, Bannigan Decl. Ex. E

(ARC0000307101) (████████████████████████████

████████████████████; Dougherty Decl. ¶ 16 ████████████

████████████████████████████████

- SS&C falsely alleges that ████████████████████████

████████████████████████████████

████████████████████ Proposed Compl. ¶ 62. I██████████

████████████████████████████████

████████████████ Dougherty Dec. ¶ 15.

Arcesium offers these brief points not as a full recitation of the proposed complaint's legal and factual defects, but rather to underscore the pressing, real-world prejudice Arcesium would suffer if SS&C is permitted to contravene the PO and use documents produced in the Antitrust Litigation; simply put, SS&C has no claim and should not be permitted to distort documents produced in the Antitrust Litigation to try to establish one.

**CONCLUSION**

The Court should deny SS&C's motion. Arcesium reserves all rights to pursue sanctions to the extent it determines that SS&C has violated the PO.


Dated: June 14, 2021                                         Respectfully submitted,

                                                             DEBEVOISE & PLIMPTON LLP

                                                             By:    /s/ *Megan Bannigan*

Of Counsel:

                                                             Jeremy Feigelson
GORDON REES SCULLY                                           James J. Pastore
MANSUKHANI, LLP                                              Megan K. Bannigan
Brian E. Middlebrook                                         919 Third Avenue
Richard L. Green* (*pro hac vice* admission                  New York, NY 10022
to be sought)                                                (212) 909-6000
One Battery Park Plaza                                       jfeigelson@debevoise.com
28th Floor                                                   jjpastore@debevoise.com
New York, NY 10004                                           mkbannigan@debevoise.com
(212) 269-5500
bmiddlebrook@grsm.com                                        *Counsel for Plaintiff Arcesium LLC*
rlgreen@grsm.com


*Resident in Glastonbury, Connecticut office