UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:__3/3/2022____        │
└─────────────────────────────────┘
```

ARCESIUM LLC,

                              Plaintiff,

          -against-

ADVENT SOFTWARE, INC. and SS&C
TECHNOLOGIES HOLDINGS, INC.,

                              Defendants.

1:20-cv-04389 (MKV)

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

        This matter is before the Court on the motion of Defendants Advent Software, Inc. and

SS&C Technologies Holdings, Inc. to clarify the protective order entered on December 17, 2020

(Protective Order ("Prot. Order") [ECF No. 103]), or, in the alternative, to modify the protective

order.  [ECF Nos. 117, 119].  In support of their motion, Defendants filed a memorandum of law.

(Def. Br. [ECF No. 118]).  In opposition to Defendants' motion, Plaintiff Arcesium LLC filed

the declaration of Megan K. Bannigan, counsel for Plaintiff, with several exhibits, (Bannigan

Decl. [ECF No. 122]), the declaration of Bryan Dougherty, the Managing Director and Head of

Technology at Plaintiff, (Dougherty Decl. [ECF No. 123]), and a memorandum of law, (Pl.

Opp'n [ECF No 121]).  Defendants filed a reply, (Def. Reply [ECF No. 128], and the declaration

of Michael W. Holt, counsel to Defendants, (Holt Decl. [ECF No. 129]).

## BACKGROUND

**I.  Procedural History**

        The Complaint in this action asserts claims for antitrust violations, breach of contract,

and business torts.  [ECF No. 1].  Plaintiff alleges that Defendants improperly terminated the

parties' Hosted Reseller Agreement (the "HRA") pursuant to which Plaintiff was supposed to

market, promote, and sell Defendants' portfolio accounting software, Geneva.  [ECF No. 1].

Plaintiff alleged that Defendants' decision to not renew the HRA was an anticompetitive "refusal to deal" and that Defendants' licensing arrangements for Geneva excluded Plaintiff from the marketplace.  [ECF No. 1].

By Opinion and Order dated March 31, 2021, the Court granted Defendants' Motion to Dismiss Plaintiff's Complaint.  [ECF No. 109].  On May 4, 2021, Defendants moved the Court to enter final judgment, [ECF No. 111], and, on May 6, 2021, the Court entered final judgment, [ECF Nos. 113, 114].  Plaintiff has not filed an appeal.

## II.    The Protective Order

While the action was pending, the parties submitted to the Court a consensual "Confidentiality Stipulation And Proposed Protective Order," [ECF No. 101], which, after review, the Court so-ordered without modification, (*See* Prot. Order).  The Protective Order states that the parties entered into the stipulation because "discovery in this litigation is likely to entail the exchange of certain documents and information that the producing parties regard as trade secrets, proprietary, commercially sensitive, or otherwise are maintained as non-public in confidence by the producing parties in the ordinary course."  (Prot. Order at 1).

The Protective Order provides mechanisms for a Producing Party unilaterally, and without Court approval, to designate particular discovery material as "Confidential Information," "Attorneys' and Experts' Eyes Only Information," or "Outside Counsel and Experts' Eyes Only Information."  (Prot. Order ¶¶ 1.6–1.9, 2).  Such designations under the Protective Order circumscribe the Receiving Party's ability to share protected material and prohibit the Receiving Party from filing Protected Material publicly on a Court docket.  (Prot. Order ¶¶ 4.2, 4.3, 4.4, 6.1).  The Protective Order provides that a Party may use protected material "for any purpose" at a hearing or trial so long as it provides reasonable notice to the Producing Party.  (Prot. Order ¶ 6.2).

The Protective Order further provides that a Receiving Party is permitted to use a Producing Party's discovery material "in connection with this litigation, including for prosecuting, defending, or attempting to settle it." (Prot. Order ¶ 4.1). The Protective Order bears the caption and case number for this case but does not otherwise define the phrase "this litigation," nor does it expressly specify that "this litigation" is limited to the above-captioned case. Finally, the Protective Order permits a Receiving Party to "seek the written permission of the Producing Party or further order of the Court with respect to dissolution or modification of this Protective Order." (Prot. Order ¶ 3.5).

## III.    Defendants' Intended Use Of Protected Information

Defendants allege that they learned from documents produced by Plaintiff in discovery that Plaintiff had misappropriated Defendants' trade secrets and that Plaintiff breached the terms of the HRA. (Def. Br. 5–6). Defendants now seek to use this information to file a new suit against Plaintiffs for, *inter alia*, breach of contract and violation of the Defend Trade Secrets Act. (Def. Br. Ex. 1 ("Proposed Complaint")). They seek modification and/or clarification of the Protective Order to sanction use of discovery produced in this action and protected by the Protective Order in aid of the action they contemplate filing against Plaintiff.

## DISCUSSION

## I.    Motion to Clarify Protective Order

Defendants argue in the first instance that the Protective Order, by its terms, permits Defendants to use discovery material to draft their Proposed Complaint. (Def. Br. 7–10). They cite to paragraph 4.1 of the Protective Order, which permits the use of discovery material "in connection with this litigation." Defendants assert that their Proposed Complaint is a continuation of "this litigation" because it names the same parties, relates to the same software and the same contractual relationship, and would be filed in the same court. (Def. Br. 7–8).

3

Defendants argue that had Plaintiff's claim not been dismissed, Defendants would have been permitted under the Protective Order to use the discovery material to pursue its proposed claims in the form of a counterclaim.  (Def. Mot. 8).

Once a protective order is approved, "regardless of what the district court had in mind at the time it signed the [order], . . . the [o]rder must be interpreted as it[s] plain language dictates." *See Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737–38 (2d Cir. 2000) (quoting *City of Hartford v. Chase*, 942 F.2d 130 (2d Cir. 1991)) (alterations in original).  Paragraph 4.1 of the Protective Order states that "[a] Receiving Party may use Discovery Material *only in connection with this litigation*, including for prosecuting, defending, or attempting to settle it."  (Prot. Order ¶ 4.1 (emphasis added)).  Black's Law Dictionary defines "litigation" as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself."  Litigation, Black's Law Dictionary (11th ed. 2019).  The Protective Order agreed to by the parties and jointly submitted to the Court for approval bears the caption and case number of Plaintiff's lawsuit.  The term "this litigation" in the Protective Order clearly refers to Plaintiff's lawsuit, not a subsequent suit involving the same parties and same core facts.

This reading of Paragraph 4.1 of the Protective Order is supported by the form of undertaking appended to the Protective Order, which includes the term "this litigation" and states that the undertaking relates to only "*Arcesium LLC v. Advent Software, Inc. and SS&C Technologies Holdings, Inc.*, Case No: 1:20-cv-04389 (MKV)."  (Prot. Order, Ex. A).

The Court concludes that "this litigation" ended with the entry of final judgment on May 6, 2021.  [ECF No. 114].  The suit that Defendants now apparently intend to file is a new and separate lawsuit, albeit one that would involve the same parties, relate to the same software and the same contractual relationship, and would be filed in the same court.  Defendants are free to

4

bring this suit, but they cannot "use" information that they obtained solely under the terms of the Protective Order to do so.

## II.     Motion to Modify Protective Order

In the alternative, Defendants move to modify the Protective Order to permit them to use discovery material protected under the Protective Order to draft their Proposed Complaint against Plaintiff in a new and separate suit.  (Def. Br. 10–11).

Rule 26(c) of the Federal Rules of Civil Procedure authorizes federal courts to issue orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Nonetheless, the decision of whether to modify a protective order is committed to the sound discretion of the court.  *S.E.C. v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001) (citation omitted).  Even after judgment, a district court retains jurisdiction to modify a protective order it has issued.  *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 (JFK), 2016 WL 3951181, at *1 (S.D.N.Y. July 20, 2016) (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 139–142 (2d Cir. 2004)).

"Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'"  *TheStreet.Com*, 273 F.3d at 229 (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir.1979)).  There is a strong presumption against modifying protective orders, *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011), because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence.  *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018) (quoting *TheStreet.Com*, 273 F.3d at 229).

Most Courts in this Circuit evaluate a motion to modify a protective order by weighing the factors laid out in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308 (D. Conn. 2009).  Those considerations include: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order.  *See*, *e.g.*, *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*, 287 F.R.D. 130, 132 (E.D.N.Y. 2012) (Bianco, J.); *Giuffre v. Dershowitz*, No. 15 CIV. 7433 (LAP), 2020 WL 3578104, at *3 (S.D.N.Y. July 1, 2020).

### A.  The Protective Order Is Not A Blanket Protective Order

First, when analyzing the scope of a protective order, "[i]t is relevant whether the order is a blanket protective order, covering all documents and testimony produced in the lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason."  *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*, 287 F.R.D. 130, 132 (E.D.N.Y. 2012) (quoting *In re EPDM*, 255 F.R.D. at 319).  Where an order is a "'blanket protective order,' it is more difficult to show a party reasonably relied."  *Id.*  A Protective Order is a blanket protective order where the order "will protect most, if not all, discovery, even if that discovery would have been required to be disclosed in the absence of a protective order."  *Id.*

Courts have found a Protective Order to be overly broad where a producing party can unilaterally and easily designate any documents as confidential.  *See id.* ("In order for a document produced during discovery to be protected, the producing party or third party need only stamp it 'CONFIDENTIAL,' or some other similar designation."); *Tradewinds Airlines*, 2016 WL 3951181, at *2 ("[T]he Order is a 'blanket' order covering all documents produced during the litigation, not a targeted order covering only certain documents."); *In re EPDM*, 255 F.R.D. at 320 (concluding that order was a "blanket protective order" where "[i]t allows all parties to designate any material containing or 'derived from trade secrets or other confidential

research, development, or commercial information of current commercial value' as

'confidential,' thus subjecting it to the order's disclosure and use restrictions.").

It does not appear that the Protective Order here is a "blanket protective order." The

definition of confidential information in the order is limited to three specifically delineated

categories of documents. (Prot. Order ¶¶ 1.7–1.9). Moreover, any designation of confidentiality

must be made in "good faith." (Prot. Order ¶¶ 1.7, 2.1). Last, though parties may unilaterally

designate documents as confidential, (Prot. Order ¶¶ 1.7–1.9), the Protective Order also allows

the receiving party to challenge those designations and for the Court to intervene if the parties

cannot reach an agreement, (Prot. Order ¶¶ 5.1–5.3). As such, this was not a "blanket protective

order." *See In re Unseal Civ. Discovery Materials*, No. 19-MC-00179 (SN), 2021 WL 1164272,

at *3 (S.D.N.Y. Mar. 24, 2021) ("The Protective Order is not a blanket order that might be

disfavored; instead, the definition of Confidential Information is limited and subject to objective

standards, and the parties may designate material only in "good faith" after attorney review.");

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No.

15CV2044AJNRLE, 2017 WL 4641247, at *3 (S.D.N.Y. Oct. 16, 2017) (protective order not

overly broad where its scope was "specific and targeted" and "describes what type of documents

would be considered highly confidential.").

### B.  It Was Reasonable For The Plaintiff To Rely On The Language Of The Order

Where a Protective Order includes terms for the destruction of all documents designated

as confidential at the end of the litigation, Courts have routinely concluded that "[t]hese

provisions suggest that the parties could . . . reasonably expect that any information produced

subject to the Protective Order would ordinarily not be used in other matters." *Nielsen Co.

(U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 121 (S.D.N.Y. 2015); *see also Jose Luis*

*Pelaez, Inc. v. Scholastic, Inc.*, 312 F. Supp. 3d 413, 417 (S.D.N.Y. 2018) (denying modification where it was "reasonable that in conducting discovery [a party] relied on the provision 'limiting the use of confidential information to this case'").  Conversely, where a Protective Order allows a party to challenge a confidentiality designation at any time or to modify the Protective Order, it is less reasonable for a party to rely on the assumption that it will never be modified.  *See Charter Oak*, 287 F.R.D. at 133 (language of protective order favors modification where "a party is permitted, pursuant to the Protective Order, to challenge a confidentiality designation and is not restricted to a time frame."); *Tradewinds Airlines*, 2016 WL 3951181, at *2 ("[T]he language of the Order supports permitting modification because it specifically provides that either party may seek changes to the Order.").

The Protective Order here has provisions both providing for the destruction of all documents designated as confidential at the end of the litigation, (*see* Prot. Order ¶ 3.4), and allowing a party to challenge a confidentiality designation at any time, (Prot. Order ¶¶ 5.1–5.3), or to seek to modify the Protective Order, (Prot. Order ¶ 3.5).  In these circumstances, courts in this district have held that it is reasonable for a plaintiff to rely on a Protective Order because, notwithstanding that a defendant could apply at any time to change the confidentiality designation of documents produced under the order, those same documents would have to be destroyed after the final termination of the litigation.  *See Nielsen*, 112 F. Supp. 3d at 121 (concluding that where a protective order allowed for the challenge of confidentiality designations, but also required the destruction of all documents produced under the order, that the there was a reasonable reliance on the order for documents not to be used "beyond the present litigation").  Moreover, the Protective Order here limited the use of discovery material produced to "this litigation" and did not allow for non-parties to access the information, (Prot. Order ¶ 4.1).  *See In re EPDM*, 255 F.R.D. at 320 ("Express provisions of an order permitting

non-parties to seek access to the protected materials will diminish the reasonableness of reliance a party claims to place on the order's permanent secrecy.").  As such, it was reasonable for Plaintiff to rely on the Protective Order.

### C.  The Court Found Good Cause To Enter The Protective Order

"A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause."  *Charter Oak*, 287 F.R.D. at 133 (citation omitted).  Courts have found that where the Court "so orders" a stipulated protective order, modification is favored if warranted.  *See id.*; *Tradewinds Airlines*, 2016 WL 3951181, at *2 ("The level of inquiry undertaken before the Order was entered also weighs in favor of modification because the Court 'so ordered' the parties' stipulation without having cause to determine whether all the documents covered actually warranted protection."); *Nielsen*, 112 F. Supp. 3d at 121 ("[T]he Court 'so ordered' the Protective Order without holding a hearing or reviewing any of the materials that would be subject to the Protective Order.  This diminishes the degree of reliance the parties could place on the Protective Order."); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, No. 05 CIV. 2745 JGK RLE, 2010 WL 779314, at *7 (S.D.N.Y. Mar. 2, 2010), *aff'd*, 415 F. App'x 286 (2d Cir. 2011) (modification favored where "the Court 'So Ordered' the stipulated confidentiality order without a good cause hearing or the opportunity to review the protected materials.").

Here, the Court carefully reviewed the terms of the proposed order.  Moreover, the Order specifically states that "the Court [] found that good cause exists for the issuance of this order." (Prot. Order at 1).  The Court continues to find that there was good cause for the protective order given that, as even Defendants have stated, [ECF No. 97, at 2], the documents here contained "sensitive trade secrets."  In *In re NASDAQ Mkt.-Makers Antitrust Litig.*, this Court held that

"although there was no showing of good cause at the time the Protective Order was issued," a Protective Order was still issued for good cause where trade secrets were included in the discovery and redaction would be extraordinarily time consuming and expensive for the parties. 164 F.R.D. 346, 357 (S.D.N.Y. 1996). As such, the Court finds that there was good cause for the issuance of the protective order.

### D. Plaintiff Relied On The Order

"[W]here the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *Charter Oak*, 287 F.R.D. at 133 (citation omitted). However, where, as apparently may be the case here, a party produces documents that could "expose it to additional litigation," it is more likely that there was reliance. *Errant Gene Therapeutics*, 2017 WL 4641247, at *4. That is exactly what appears to have happened here as Defendants now seek to use documents disclosed to them in a subsequent suit against Plaintiff.

*       *       *

The Court finds that the Protective Order is not a blanket protective order, that it was reasonable for Plaintiff to rely on the language of the Protective Order and that Plaintiff did so rely, and lastly, that good cause exists for the Protective Order. As such, considering all the *EPDM* factors, the Court concludes that modification of the Protective Order is not warranted here.

### E. Other Considerations

Defendants raise several other arguments for why the Court should modify the Protective Order so as allow them to use certain documents obtained in discovery against Plaintiff in a subsequent suit. Defendants argue that had their motion to dismiss been denied, they would have filed counterclaims and ultimately introduced these documents and evidence at summary

judgment or trial.  (Def. Br. 13, Def. Reply 2).  Defendants are correct that they were free to wait

to assert their counterclaims until after the resolution of their motion to dismiss.  However, they

also could have "serve[d] an answer and counterclaim alongside the motion to dismiss."

*Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 137 n.9 (2d Cir. 2021).

Defendants chose not to do so and should have been prepared for the consequences of their

litigation strategy.  *See In re Hornbeam Corp.*, No. 14-MC-424, 2020 WL 4698955, at *4

(S.D.N.Y. Aug. 13, 2020) ("[A] mere change in litigation strategy at a later point should not be

sufficient to unwind a protective order.").  Moreover, the Court's order does not preclude

Defendants from asserting their counterclaims against Plaintiff as affirmative claims in a

subsequent action and seeking discovery there if warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion to clarify the

protective order entered on December 17, 2020, or, in the alternative, to modify the protective

order is DENIED.  Defendants' request for oral argument is DENIED.

Nonetheless, the Court is not aware of a reason why Defendants would need the Court's

permission to file a new and separate suit against Plaintiff for what it contends is a breach of

contract.  The Protective Order prevents Defendants from using any information they obtained

from this litigation outside of this case, but pursuant to Rule 11, a party may file a pleading with

factual allegations that the filing party certifies "will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).

Moreover, it would be a perversion if the effect of the Protective Order shielded a party who

committed a clear breach from a subsequent lawsuit from an aggrieved plaintiff.  Though

Defendants cannot cite to or quote any evidence obtained under the Protective Order, Defendants are free to file a new and separate suit so long as such filing complies with Rule 11.

The Clerk of Court is respectfully requested to close docket entries 117 and 119.


**SO ORDERED.**

**Date:  March 3, 2022**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**